IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

C-TECH CORPORATION                    :

                                      :

     v.                               :    Civil Action No. DKC 11-0983

                                      :

AVERSION TECHNOLOGIES, et al.         :

                                      :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case are two motions:  a motion for voluntary dismissal with prejudice filed by Plaintiff C-Tech Corporation ("C-Tech") (ECF No. 28) and a motion filed by Defendant Aversion Technologies, Inc. ("Aversion") seeking partial summary judgment on its contractual counterclaim for litigation costs and attorneys' fees (ECF No. 30).  Also pending is a request for statutory attorneys' fees by Aversion and Defendant Peter Tutini.[1]  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motion for voluntary dismissal with prejudice will be granted; the motion for partial summary judgment on Aversion's counterclaim for litigation costs and

_____

[1] As set forth below, Aversion and Defendant Peter Tutini filed a single brief addressing attorneys' fees (ECF No. 30), but it contains two distinct issues that will be addressed separately.

attorneys' fees will be granted in part and denied in part; and the request for statutory attorneys' fees will be denied.[2]

## I.   Background

### A.   Factual Background

The following facts are uncontroverted.  C-Tech, a foreign corporation based in India, entered into an exclusive distributor agreement ("the Agreement") with Aversion, a Maryland corporation, on November 1, 2006.  Mr. Tutini at Aversion prepared the final draft of the Agreement.  Pursuant to the Agreement, Aversion agreed to act as the exclusive distributor of certain C-Tech products in North America, Central America, and South America, as well as a non-exclusive distributor in other geographic areas.  Aversion also agreed: (1) to promote and sell C-Tech's products, including Rodrepel, a rodent repellant containing denatonium benzoate; (2) "not to sell any product competitive to C-Tech's products"; (3) to keep C-Tech's proprietary information "in the strictest of confidence"; and (4) not to "use" or "disclose" any confidential information without the prior written consent of C-Tech, both during the term of the Agreement "or at any time subsequent thereto."  (ECF No. 1-1 ¶¶ 1, 2.5, 2.6).  The parties mutually

---

[2] Defendants also filed a motion to dismiss and for summary judgment on Plaintiff's claims.  (ECF No. 26).  That motion will be denied as moot.

terminated the Agreement on June 20, 2007, but agreed that Aversion could continue to sell Rodrepel on a non-exclusive basis.

On January 30, 2008, Aversion submitted a trademark application for Rodrepel, a product developed by C-Tech, to the United States Patent and Trademark Office, which was granted on November 18, 2008. After negotiations between the parties, C-Tech paid Aversion $3,500 on November 17, 2009 in exchange for an assignment of the Rodrepel® trademark. At some point thereafter, Aversion began marketing and selling a product known as Repela, a rodent repellent that, like Rodrepel®, contains denatonium benzoate.

### B.   Procedural Background

On April 14, 2011, C-Tech filed a complaint in this court against Aversion and Mr. Tutini, alleging counts for breach of contract, common law trademark infringement, violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), unfair competition under Maryland law, and violations of the Maryland Uniform Trade Secrets Act, Md. Code, Com. Law §§ 11-1201 *et seq.* ("MUTSA"). (ECF No. 1). On July 13, 2011, Defendants filed an answer to the complaint, and Aversion asserted a counterclaim against C-Tech seeking its "reasonable costs of litigation," including "its attorney's fees, costs, expert witness fees, and expenses." (ECF No. 5).

Following the entry of a scheduling order, the parties engaged in discovery and agreed to the entry of a stipulated protective order on October 25, 2011. (ECF No. 20). After the close of discovery on January 18, 2012, Defendants filed a motion to dismiss and for summary judgment on January 24, 2012. (ECF No. 26).

On March 5, 2012 — the court-extended deadline for C-Tech's opposition to Defendants' motion — C-Tech filed a motion for voluntary dismissal of its complaint with prejudice, citing the poor health of its principal, "among other things." (ECF No. 28). On March 22, 2012, Defendants filed a response to the motion for voluntary dismissal in which (1) Aversion moved for partial summary judgment on its counterclaim, seeking a determination of C-Tech's liability for its litigation costs and attorneys' fees and (2) both Defendants requested attorneys' fees pursuant to the Lanham Act and the MUTSA. (ECF No. 30).[3] C-Tech filed an opposition to Aversion's motion for partial summary judgment and to Defendants' request for statutory attorneys' fees (ECF No. 31), and Defendants filed a reply (ECF No. 32).

---

[3] Defendants note their intent to file documentation to support the reasonableness of their attorneys' fees in accordance with Local Rule 109 if C-Tech is held liable for such fees. (*See* ECF No. 30, at 5).

## II.  Motion for Voluntary Dismissal

C-Tech moves for voluntary dismissal of its claims pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, which allows for dismissal by court order after the opposing party has served either an answer or motion for summary judgment and without the consent of all parties who have appeared.[4] Typically, the decision to grant or deny a voluntary dismissal under Rule 41(a)(2) is a matter of discretion to be guided by certain factors, including the potential prejudice to the non-moving party.  *Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 178-79 (4th Cir. 2008).

Where, as here, a plaintiff's Rule 41(a)(2) motion "specifically request[s] dismissal *with* prejudice, it has been held that the district court *must* grant that request."  9 Charles A. Wright & Arthur R. Miller § 2367 (3d ed. 2008) (emphases added).  Indeed, that C-Tech seeks "dismissal *with* prejudice is of paramount importance," *F.D.I.C. v. Becker*, 166 F.R.D. 14, 15 (D.Md. 1996), because a voluntary dismissal with prejudice under Rule 41(a)(2) operates as "a complete adjudication on the merits of the dismissed claim," *Harrison v.*

---

[4] By contrast, Rule 41(a)(1) allows a plaintiff to dismiss an action voluntarily without a court order by filing either (1) a notice of dismissal, so long as the opposing party has not filed an answer or motion for summary judgment, or (2) a stipulation of dismissal signed by all parties who have appeared in the case.

*Edison Bros. Apparel Stores Inc.*, 924 F.2d 530, 534 (4th Cir. 1991). Absent a specific order by the court, dismissal with prejudice "is subject to the usual rules of *res judicata*." 9 Wright & Miller § 2367; *see also McLean v. United States*, 566 F.3d 391, 407 (4th Cir. 2009) ("A dismissal with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.") (internal quotation marks omitted). Moreover, "[n]ormally, a plaintiff may not appeal the dismissal of his suit with prejudice, which is granted on his own motion." *Distaff, Inc. v. Springfield Contracting Corp.*, 984 F.2d 108, 110 (4th Cir. 1993) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 680 (1958)).

Given that dismissal with prejudice of C-Tech's complaint insulates Defendants from further litigation arising out of the dismissed claims, any injustice that Defendants might otherwise suffer "is significantly lessened." *Becker*, 166 F.R.D. at 15. Indeed, although they question the "eleventh hour" timing of C-Tech's voluntary dismissal and refused to sign a stipulation of voluntary dismissal at C-Tech's request, Defendants agree that dismissal with prejudice is "probably the most appropriate course of action here," notwithstanding the pendency of their motion to dismiss and for summary judgment on C-Tech's claims. (ECF No. 30, at 4).

6

Because district courts ordinarily "must" grant a plaintiff's request for voluntary dismissal with prejudice and because Defendants here have not offered any argument that such a dismissal would prejudice their rights, C-Tech's Rule 41(a)(2) motion will be granted.

The question remains, however, as to whether any conditions should be attached to the dismissal of the complaint. Rule 41(a)(2) affords discretion to order dismissal "upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). Defendants explicitly request only one such condition: that C-Tech, a foreign corporation without any known presence in the United States, be ordered to furnish a bond or some other assurance that Plaintiff will pay any judgment entered in Defendants' favor. (ECF No. 30, at 4 n.3). Because C-Tech will not be held liable for any of Defendants' attorneys' fees and because C-Tech does not dispute its obligation to pay Aversion's reasonable litigation costs (excluding attorneys' fees), Defendants' request for a bond will be denied.

As explained below in Section IV, Defendants also seek attorneys' fees pursuant to the Lanham Act and the MUTSA. Although not framed as a request under Rule 41(a)(2), Defendants' statutory entitlement to attorneys' fees will be analyzed under Rule 41(a)(2) because that is the only means by which such fees could be awarded at this stage. For the reasons

set forth in Section IV, Defendants' request will be denied and the dismissal of C-Tech's complaint will not be conditioned on an award of attorneys' fees.

### III. Aversion's Motion for Partial Summary Judgment on Its Contractual Counterclaim for Attorneys' Fees

In its motion for partial summary judgment on its contractual counterclaim (ECF No. 30), Aversion seeks a determination of C-Tech's liability for its reasonable litigation costs, including attorneys' fees.[5]

As the parties acknowledge, Maryland law governs the resolution of this dispute pursuant to Paragraph 4.16 of the Agreement. (*See* ECF No. 1-1, at 6). Maryland follows the common law "American Rule," which states that, generally, a prevailing party is not awarded attorneys' fees "unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into

---

[5] Although Defendants' opening and reply briefs refer to the counterclaim as being "theirs" (*e.g.*, ECF No. 30, at 1; ECF No. 32, at 1), Aversion alone asserts the contractual counterclaim (ECF No. 5, at 10), likely because Mr. Tutini was not a party to the Agreement. Accordingly, the motion for partial summary judgment on the counterclaim likewise will be construed as being brought by Aversion alone. Additionally, because the counterclaim is titled "Breach of Contract," Defendants' statutory arguments will not be considered in ruling on Aversion's motion for partial summary judgment but instead will be construed as constituting a separate request for attorneys' fees by both Defendants that will be addressed in Section IV.

litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445 (2008) (internal quotation marks and citation omitted).

Aversion contends that the American Rule has been superseded in this case based on Paragraph 4.17 of the Agreement, which provides that "[i]n the event that litigation is instituted to enforce any provision of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable costs of such litigation." (ECF No. 1-1, at 6). Aversion argues that the phrase "reasonable costs of such litigation" encompasses its reasonable attorneys' fees. (ECF No. 30, at 4-6; ECF No. 32, at 3-5). Although C-Tech concedes that Paragraph 4.17 justifies an order awarding Aversion its "reasonable costs of [] litigation," Plaintiff maintains that such costs do not include attorneys' fees. (ECF No. 31, at 21-23).[6] As set forth below, C-Tech has the better argument.

In order to award attorneys' fees based on a contractual provision, the contract between the parties must "specifically

---

[6] C-Tech does not dispute that Aversion is a "prevailing party" within the meaning of Paragraph 4.17. In fact, C-Tech affirmatively concedes that point at numerous points in its brief. (*See, e.g.*, ECF No. 31, at 19, 20). In light of this concession, it is not necessary to decide whether granting a C-Tech's unopposed Rule 41(a)(2) motion for voluntary dismissal with prejudice renders Aversion a "prevailing party" under Maryland law.

authorize" recovery of such fees. *Thomas v. Capital Med. Mgt. Assocs., LLC*, 189 Md.App. 439, 468 (2009) (citing *Maxima Corp. v. 6933 Arlington Dev. Ltd. P'ship*, 100 Md.App. 441, 452 (1994)).  Under the objective theory of contract interpretation, which applies in Maryland, a court must "give effect to the plain meaning of an unambiguous term, and will evaluate a specific provision in light of the language of the entire contract." *Weichert Co. of Md., Inc. v. Faust*, 419 Md. 306, 324 (2011).  Contract terms must be construed according to their "customary, ordinary and accepted meaning," regardless of the parties' intentions at the time the contract was formed. *Nova Research,* 405 Md. at 448.   Therefore, when interpreting a contract, the court's task is to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Calomiris v. Woods*, 353 Md. 425, 436 (1999) (internal quotation marks omitted); *see also Capital Select Realtors, LLC v. NRT Mid-Atl., LLC*, 197 Md.App. 698, 711 (2011) ("The [objective theory of contract interpretation] encourages parties to use language as precisely as possible, so as to forestall costly inquiries into their subjective intentions.").

Absent a finding of ambiguity, parol evidence of the parties' intent or meaning should not be considered. *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 660 (2004); *see*

*also Higgins v. Barnes*, 310 Md. 532, 537 (1987) ("[E]vidence is inadmissible to vary, alter, or contradict a contract that is complete and unambiguous."). "Ambiguity arises if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning." *Anderson Adventures, LLC v. Sam & Murphy, Inc.,* 176 Md.App. 164, 178 (2007) (internal quotation marks and citation omitted). "[I]t is well-settled that a contract is not ambiguous merely because of a controversy concerning the proper interpretation of its terms." *B & P Enters. v. Overland Equip. Co.*, 133 Md.App. 583, 605 (2000) (citing *Lerner Corp. v. Three Winthrop Props., Inc.*, 124 Md.App. 679, 685 (1999)).

In this case, the term that must be construed — "reasonable costs of such litigation" — is not ambiguous. Black's Law Dictionary defines "litigation costs" as "[t]he expenses of litigation, prosecution, or other legal transaction, esp. those allowed in favor of one party against the other" and further notes that "[s]ome but not all states allow parties to claim attorney's fees as a litigation cost." Black's Law Dictionary (9th ed. 2009). Maryland decidedly is not one of those states. For more than a century, "[i]t [has been] well settled in this state that the costs of a suit do not, apart from statutory direction, include the counsel fees of the successful party," and that attorneys' fees are "not part of the costs of the suit,

in the ordinary sense." *Singer v. Fid. & Deposit Co. of Md.*, 54 A. 63, 63 (Md. 1903).   Thus, in Maryland, the customary, ordinary and accepted meaning of the term "reasonable costs of such litigation" does not include attorneys' fees.   Because Paragraph 4.17 is unambiguous, there is no need to consider parol evidence of the parties' intent.[7]

The Maryland cases cited by Aversion to support its argument that the term "reasonable costs of such litigation" unambiguously includes attorneys' fees are not apposite.   In *Brady v. Dilley*, the court held that attorneys' fees incurred by a trustee in connection with the sale of a trust property were allowable under a term in the deed of trust permitting recovery of "just and reasonable expenses, costs, charges and commissions" attendant to the trust's administration.   27 Md. 570, 582 (1867).   *Brady* is irrelevant to the construction of the Agreement here for two reasons.   First, the deed of trust in *Brady* mentioned "costs" without any reference to "litigation," distinguishing it from the use of "costs" in Paragraph 4.17.

---

[7] Even if the term "reasonable costs of such litigation" were ambiguous, Maryland law would require Paragraph 4.17 to be construed against Aversion because Mr. Tutini, as the undisputed drafter of the Agreement, could have made the language of the provision clearer by explicitly referencing "attorneys' fees." *See King v. Bankerd*, 303 Md. 98, 106 (1985) ("[A]mbiguities in an instrument are resolved against the party who made it or caused it to be made, because that party had the better opportunity to understand and explain his meaning.").

*See id.*  Second, the deed of trust included broader language by also referring to the availability of "expenses," "charges," and "commissions," and the court's holding did not make clear which particular term or combination of terms it relied on to uphold the award of attorneys' fees.  *Id.*

Also unavailing is Aversion's reliance on the trio of Maryland Court of Appeals cases addressing the recovery of attorneys' fees in the context of indemnity agreements:  *Jones v. Calvin B. Taylor Banking Co.*, 253 Md. 430 (1969), *Atlantic Contracting & Material Co., Inc. v. Ulico Casualty Co.*, 380 Md. 285 (2004), and *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435 (2008).

In *Jones*, a mobile-home manufacturer entered into a financing agreement with a bank, pursuant to which the bank accepted assignment of the manufacturer's accounts receivables and the responsibility for paying its suppliers.  253 Md. at 431-32.  In exchange, the manufacturer's officers executed a note guaranteeing the bank against any loss resulting from the arrangement.  *Id.*  After the manufacturer was adjudged bankrupt, the bankruptcy trustee obtained a judgment against the bank to recover amounts it received pursuant to the agreement.  *Id.* at 436.  The bank then sued the manufacturer's officers to recover its losses, including the attorneys' fees incurred in the bankruptcy proceedings.  *Id.* at 437.  The Maryland Court of

13

Appeals upheld the lower court's award of attorneys' fees based on the "general rule [that], unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees." *Id.* at 411. Importantly, the *Jones* court did not construe any contractual language to reach its holding; instead, the court created a new exception to the American Rule by implying a fee-shifting provision based on principles of indemnification. *See Nova Research*, 405 Md. at 446 (explaining that the "implied indemnity exception" to the American Rule originated in *Jones*). Because neither party contends that the Agreement between C-Tech and Aversion is one for indemnity, *Jones* is irrelevant to Aversion's contractual counterclaim for attorneys' fees.

Nor can Aversion's position be supported by *Atlantic Contracting.* In contrast to *Jones*, *Atlantic Contracting* did involve the construction of contractual language. There, a subcontractor promised to indemnify its surety against all "loss," defined as:

> Any and all damages, costs, charges, and expenses of any kind, sustained or incurred by [the surety] in connection with or as a result of: (1) the furnishing of any Bonds; and (2) the enforcement of this [indemnification] Agreement.

*Atlantic Contracting*, 380 Md. at 302. Pursuant to this definition, the surety sued the subcontractor to recover amounts

14

paid pursuant to the bond, as well as attorneys' fees incurred
in suing to enforce the agreement.  *Id.* at 296.   The Court of
Appeals held that "under the terms of the indemnity agreement,"
the subcontractor was "obligated by contract" to pay the surety
for "the sums it incurred to enforce the agreement, which
included its attorneys' fees, costs, and expenses." *Id.* at 316.
This holding has no relevance here because the definition of
"loss" at issue in *Atlantic Contracting* is distinguishable from
the language of Paragraph 4.17 in two critical ways.   First,
although the definition of "loss" included "costs," it also
included a number of additional terms – e.g., "damages,"
"charges," and "expenses" – that are not mentioned in the
Agreement.   Second, each of the aforementioned terms was also
modified by the phrase "any and all," *id.* at 302, making the
definition of "loss" much broader than the language used by the
parties in Paragraph 4.17.

Finally, Aversion's reliance on *Nova Research* also is
misplaced.  *Nova Research* addressed whether an indemnitee can
recover first-party attorneys' fees (i.e., those fees incurred
to enforce the terms of the indemnity agreement) where the
agreement does not include an express provision for such
recovery.  *See* 405 Md. at 444-58.   The Court of Appeals first
noted that the implied indemnity exception to the American Rule
established in *Jones* applies only to the recovery of attorneys'

15

fees incurred in defending against third-party actions and "does not accurately settle the matter" for first-party attorneys' fees, which is "a question to be answered by interpretation of the contract." *Id.* at 447, 449 (internal quotation marks omitted). The agreement at issue in *Nova Research* required the customer of a rental truck company to "indemnify, and hold harmless [the company] . . . from and against all loss, liability and expense caused or arising out of [the customer's] failure to comply with the terms of this Agreement." *Id.* at 450. The court held that this did not constitute the type of "express fee shifting provision" that is required in the first-party context. *Id.* at 451.

Significantly here, the *Nova Research* court did, as Aversion notes, observe that the implied indemnity exception established by *Jones* "aligns us with those states that do not strictly require the phrase 'attorneys' fees' in a contract to override the American Rule," but then declined to extend this principle beyond the implied-indemnity exception for third-party attorneys' fees because, otherwise, "the exception would swallow the rule." *Id.* at 452. The court explained that its holding "comports with the generally accepted rule, requiring that a contract provision must call for fee recovery expressly for [enforcing the terms of the agreement itself] in order to overcome the application of the American rule." *Id.* at 453.

Hence, *Nova Research* does not, as Aversion contends, support that the term "reasonable costs of such litigation" unambiguously includes attorneys' fees.  Rather, *Nova Research* confirms that Maryland follows the approach adopted by a "majority of courts" that "contractual attorney's fees provisions must be strictly construed to avoid inferring duties that the parties did not intend to create."  *Id.* at 455, 458 (internal quotation marks and citation omitted); *cf. Talley v. Talley*, 317 Md. 428, 438-39 (1989) ("The power to award attorney's fees, being contrary to the established practice in this country, may be expressly conferred but will not be presumed from general language.").

Aversion also mistakenly contends that, if Paragraph 4.17 is not interpreted to encompass attorneys' fees, the provision would be rendered meaningless because a "prevailing party" is already entitled to its costs in both federal court, pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, and state court, pursuant to Maryland Rules 2-603(a) and 3-603(a). (ECF No. 30, at 5).  Maryland does subscribe to the "general rule" that courts must "avoid interpreting contracts in a way that renders its provisions superfluous." *Calomiris*, 353 Md. at 442.  Contrary to Aversion's argument, however, construing Paragraph 4.17 to exclude attorneys' fees does not render the provision merely duplicative of existing law.  Indeed, the

17

contractual clause is distinguishable from the statutes and regulations cited by Aversion in two respects.

First, the taxable costs available to a prevailing civil litigant pursuant to statute and rule typically are limited. *See, e.g.*, *Taniguchi v. Kan Pac. Saipan, Ltd.*, --- U.S. ---, 132 S.Ct. 1997, 2006 (2012) (reaffirming the "narrow scope of taxable costs" available under 28 U.S.C. § 1920, the text of which is limited to "relatively minor, incidental expenses"). For example, in *Taniguchi*, the United States Supreme Court held that the reference in 28 U.S.C. § 1920 to "compensation of interpreters" does not permit a prevailing party to recover the costs associated with document translation because "the ordinary meaning of 'interpreter' is someone who translates orally from one language to another." *Id.* at 2007. There are no comparable restrictions on the "reasonable costs of . . . litigation" available pursuant to the Agreement, such that Aversion may be entitled to an award of certain litigation costs that would not be taxable under Rule 54(d). Indeed, if Paragraph 4.17 were interpreted to be limited to those costs available pursuant to statute or rule, the provision *would* be rendered superfluous. *See, e.g.*, *Best Buy Stores v. Developers Diversified Realty Corp.*, No. 05-2310, 2011 WL 1321391, at *10-11 (D.Minn. Feb. 1, 2011) (agreeing that a contract clause providing for the recovery of "legal costs" does not include attorneys' fees but

also holding that the clause is not limited to those costs available under 28 U.S.C. § 1920 because a contrary construction would render the provision surplusage).

Second, because Paragraph 4.17 mandates that the prevailing party "*shall* be entitled to recover its reasonable costs of such litigation," the provision also eliminates the discretion that a court typically has to deny an award of costs to a prevailing litigant.  For example, in Maryland, "allowance of . . . costs [pursuant to Md. Rule 2-603] is within the discretion of the Court."  *Bahena v. Foster*, 164 Md.App. 275, 286 (2005). Likewise, "the federal courts are free to pursue a case-by-case approach [to award costs pursuant to Rule 54(d)] and to make their decisions on the basis of the circumstances and equities of each case."  9 Wright & Miller § 2367.  By contrast, the use of "shall" makes an award of costs to a prevailing party under the Agreement non-discretionary.  Therefore, it cannot be said that construing Paragraph 4.17 to exclude attorneys' fees renders the provision duplicative of the statutes and rules cited by Aversion.

In sum, although Paragraph 4.17 entitles Aversion to its "reasonable costs of [this] litigation," such costs do not include its attorneys' fees.  To that end, the motion for partial summary judgment on Aversion's counterclaim will be granted in part and denied in part.  Because the costs to which

19

Aversion is entitled to recover from C-Tech may extend beyond those normally recoverable and taxable by the clerk, the petition shall be submitted to the undersigned, and not to the clerk.   Nevertheless, as set forth in the accompanying order, Aversion will be directed to submit documentation as required by Local Rule 109 within fourteen (14) days.

## IV.  Defendants' Request for Attorneys' Fees

Aversion and Mr. Tutini also request their attorneys' fees pursuant to two statutes:  (1) the fee-shifting provision of the MUTSA; and (2) Section 35(a) of the Lanham Act.  (ECF No. 30, at 6-9).[8]  Defendants did not specifically plead a claim for attorneys' fees under either of these statutes in their answer, and – as previously noted – the counterclaim filed by Aversion asserted only a contractual right to attorneys' fees.  (*See* ECF No. 5).  Accordingly, such claims are barred pursuant to Fourth Circuit precedent holding that attorneys' fees constitute

---

[8] In their reply brief, Defendants also argue that C-Tech has admitted to asserting "doomed claims" knowingly, such that an award of attorneys' fees is warranted as a sanction pursuant to either Rule 11 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927. (ECF No. 32, at 3).  Defendants failed to raise this argument in their opening brief, and it will not be addressed here pursuant to the general rule in federal courts that an argument raised for the first time in a reply brief will not be considered.  *Clawson v. FedEx Ground Package Sys.*, 451 F.Supp.2d 731, 734 (D.Md. 2006); *see also United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).  Furthermore, Rule 11 has its own procedural requirements, none of which have been met here.

"special damages" that must be specifically pled pursuant to Rule 9(g) of the Federal Rules of Civil Procedure. *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 n.4 (4th Cir. 1983) (noting that "attorneys' fees are items of special damage for Rule 9(g) purposes"); *see also Belk, Inc. v. Meyer Corp., U.S.*, No. 07-cv-168, 2010 WL 3474918, at *7 (W.D.N.C. Aug. 31, 2010) (adhering to *Atlantic Purchasers* as "binding precedent" that barred a prevailing defendant's claim for attorneys' fees under the Lanham Act where the defendant filed a motion for attorneys' fees under Rule 54(d) but had not specifically plead its statutory right to such fees in its responsive pleadings).

Nonetheless, although Defendants do not specifically request attorneys' fees as a condition of dismissal, Rule 41(a)(2) allows for dismissal of C-Tech's claims "on terms that the court considers proper." F.R.C.P. 41(a)(2). Ordinarily, where a motion for voluntary dismissal is granted with prejudice, an award of attorneys' fees is not appropriate because there is no risk that the defendant can "be called upon again to defend" and thus no risk of "any duplication of expense." *Lawrence v. Fuld*, 32 F.R.D. 329, 331 (D.Md. 1963). Courts have recognized two exceptions to this general principle: (1) where the case involves "exceptional circumstances" and (2) where "there is independent statutory authority for such an

award." 9 Wright & Miller § 2366 (internal quotation marks and citations omitted).   Because the fee-shifting provisions cited by Defendants fall into this latter category, the merits of Defendants' statutory requests for attorneys' fees will be addressed.   *Cf. Belk*, 2010 WL 3474918, at *7 (considering the merits of a prevailing defendant's claim for attorneys' fees under the Lanham Act based on Rule 54(c), which requires final judgments – other than default judgments – to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").   For the reasons set forth below, an award of attorneys' fees is not warranted under either statute.

### A.   Maryland Trade Secrets Act

First, Defendants insist that, as the prevailing parties in this litigation, they are entitled to an award of attorneys' fees under the MUTSA because C-Tech brought its trade secrets claim in bad faith.[9]   Because Defendants have not met their burden to offer clear evidence of bad faith, there is no basis for such an award.

---

[9] Here again, C-Tech does not question that Defendants are "prevailing part[ies]" within the meaning of the MUTSA's attorneys' fees provision. (*See* ECF No. 30, at 24-25).   Because Defendants have not shown that C-Tech brought its misappropriation claim in "bad faith" as required by the MUTSA, the issue of whether Defendants are "prevailing" within the meaning of the statute need not be reached.

The MUTSA bestows courts with discretion to award attorneys' fees to a prevailing defendant where "[a] claim of misappropriation is made in bad faith." Md. Code, Com. Law § 11-1204. A prevailing defendant must offer "clear evidence that the action [was] entirely without color and taken for other improper purposes amounting to bad faith," meaning that the plaintiff prosecuted the action "vexatiously, wantonly, or for oppressive reasons." *Optic Graphics, Inc. v. Agee*, 87 Md.App. 770, 789 (1991), *cert. denied*, 324 Md. 658 (1991). In *Contract Materials Processing, Inc. v. Kateleuna GMBH Catalysts*, the court predicted that the Maryland Court of Appeals would join other jurisdictions in holding that "bad faith" exists where the plaintiff (1) brings an "objective[ly] specious[]" claim; and (2) engages in "subjective misconduct in bringing or maintaining" the claim. 222 F.Supp.2d 733, 744-45 (D.Md. 2002) (adopting the two-pronged test used by courts interpreting statutes that, like the MUTSA, are based on the Uniform Trade Secrets Act).

Defendants posit that this action is factually similar to *Contract Materials*, where a prevailing MUTSA defendant received an award of attorneys' fees. Specifically, Defendants contend that, as in *Contract Materials*, the evidence offered by C-Tech "fall[s] short of making even a *prima facie* case of misappropriation of trade secrets," indicating the objective

23

speciousness of its MUTSA claim. (ECF No. 32, at 8). Defendants also contend that C-Tech has engaged in subjective misconduct by: (1) continuing to pursue this action despite its knowledge of Defendants' judgment-proof status in an effort to "put [Defendants] out of business" (ECF No. 30, at 7); (2) demanding that Defendants exit the chemical business in exchange for dismissing the action (ECF No. 32, at 9); (3) continuing to repeat allegations that it "knows it cannot prove" (*id.*); and (4) violating the protective order by attaching a document marked "Highly Confidential" as an exhibit to its opposition (*id.* at 9-10).

Despite Defendants' efforts to analogize to *Contract Materials*, this case is factually distinguishable in a number of critical respects. First, unlike the plaintiff in *Contract Materials* whose claim was deemed to be "utter[ly] lack[ing] [in] substantive legal merit" from the outset, 222 F.Supp.2d at 746, C-Tech offers *some* evidence in support of a prima facie claim of misappropriation of trade secrets. To prevail on such a claim, Plaintiff would ultimately need to show that: (1) the technology in question qualifies as a trade secret and (2) Defendants misappropriated the technology. *See Diamond v. T. Rowe Price Assocs., Inc.,* 852 F.Supp. 372, 412 (D.Md. 1994). Information qualifies as a trade secret where it "(1) hold[s] independent economic value because it is not generally known to

24

or readily ascertainable by others who stand to benefit economically if they use or disclose it, and (2) [is] the subject of reasonable efforts to maintain its secrecy." *Optic Graphics*, 87 Md.App. at 787. "In order to qualify as misappropriation under MUTSA, one must either acquire the trade secret by improper means or disclose the trade secret without express or implied consent." *Diamond,* 852 F.Supp. at 412.

With respect to the first element, C-Tech's principal averred in a declaration that C-Tech shared certain proprietary information with Aversion, including the allegedly unique composition of Rodrepel® that distinguishes it from other denatonium benzoate-based rodent repellants on the market. (ECF No. 31-1, Joshi Decl. ¶ 10). Such information might qualify as a trade secret under Maryland law given that C-Tech appears to have taken steps to maintain its secrecy via the confidentiality provisions of the parties' Agreement.[10]  *See, e.g.*, *Bond v. PolyCycle, Inc.*, 127 Md.App. 365, 375-76 (1999) (although other companies used similar approaches to breaking down plastic, the subject technology could be deemed a "trade secret" where the

---

[10]  Read together, Paragraphs 2.5 and 2.6 of the Agreement prohibit Aversion from "us[ing] . . . any . . . information [identified as proprietary or which, from the circumstances, in good faith and good conscience, ought to be treated as confidential]" during the term of the Agreement or "at any time subsequent thereto." (ECF No. 1-1 ¶¶ 2.5 & 2.6).

defendant's knowledge of its formula stemmed from his experience at the company rather than a general study of the marketplace).

In support of the second element of a MUTSA claim, C-Tech offers evidence showing that Aversion sold a product that is highly similar to Rodrepel®, including pages from the web site of Aversion containing language that is obviously similar to C-Tech's marketing materials for Rodrepel®. (*Compare* ECF No. 31-12 *with* ECF No. 31-13). Such evidence gives rise to an arguably plausible inference that Aversion, without the consent of C-Tech, used confidential information about the composition of Rodrepel® to sell a competing product, which could constitute a violation of the MUTSA. *See, e.g.*, *PolyCycle*, 127 Md.App. at 379 (explaining that a former agent's unauthorized use of confidential information acquired during the course of the agency relationship can constitute "misappropriation").

The rebuttal evidence offered by Defendants in their motion to dismiss or for summary judgment indicates that C-Tech likely would not have been able to prevail on its MUTSA claim had it filed an opposition to that motion. (*See* ECF No. 26). Based on the current record, however, it cannot be said that C-Tech "alleged" an MUTSA claim "in objective speciousness." *Contract Materials*, 222 F.Supp.2d at 747.

Nor does the record support a conclusion that C-Tech engaged in "subjective misconduct" by "maintaining" its MUTSA

claim until this point.   In *Contract Materials*, the losing plaintiff "continued to pursue" its meritless MUTSA claim after *losing* on summary judgment and "in reckless disregard of [its] speciousness," as established by the prior ruling of the court. *Id.* at 745.   Here, by contrast, C-Tech made a "business decision" to dismiss its claims voluntarily before opposing Defendants' motion and before the issuance of any evidentiary findings.   Because there has been no comparable evidentiary determination that the MUTSA claim lacks any merit, the procedural posture of *Contract Materials* renders that case inapposite to the facts here.   *See also JLM Formation, Inc. v. Form%8FPac*, No. 04-1774, 2004 WL 1858132, at *2 (N.D.Cal. Aug. 19, 2004) (explaining that where a plaintiff voluntarily dismisses its case prior to summary judgment or trial, it is difficult to contend that it "maintained" or "prosecuted" its trade secret claim so as to sustain a finding of "bad faith").

What is more, the type of litigation misconduct held to warrant an award of attorneys' fees in *Contract Materials* is not present here.   There, the clear and convincing evidence established that the plaintiff had committed "promiscuous" discovery abuses, including by serving overbroad discovery requests and filing numerous unsuccessful motions to compel. *Contract Materials*, 222 F.Supp.2d at 748.   Here, the only concrete action that Defendants point to as evidence of

27

"subjective misconduct" is C-Tech's alleged violation of the protective order by attaching a document marked "Highly Confidential" to its opposition. (ECF No. 32, at 9-10). The document in question is an email inquiry from an Aversion customer to Mr. Tutini asking for advice about how to combine denatonium benzoate and capsaicin oil to deter mammals and birds. (*See* ECF No. 31-16). The customer also inquired whether Mr. Tutini "knew anything about" C-Tech or Rodrepel® based on the similarities between an article authored by Aversion and a white paper drafted by C-Tech. (*See id*.). In response, Mr. Tutini: (1) offered "guesses" about the proper ratios for the products; (2) confirmed that the resulting mixture would be stable; and (3) indicated his familiarity with Rodrepel®. (*See id*.) Although the inclusion of this document without filing a motion to seal does violate the protective order and therefore can serve as a basis for sanctions or other appropriate relief (*see* ECF No. 18 ¶ 27), Defendants' designation of this email exchange as "Highly Confidential" is suspect. The stipulated protective order allows for a "Highly Confidential" designation where the party believes, in good faith, that the information is "highly confidential, proprietary or trade secret information" that requires heightened protection. (ECF No. 18 ¶ 5). Yet the substance of this email exchange — i.e., how denatonimum benzoate can be combined with other products sold by both C-Tech

28

and Aversion effectively to deter animals — is precisely the type of information that Defendants argue is *not* a trade secret because of its availability in the public domain. (*See* ECF No. 26, at 12-16). As it is not clear that Defendants had a good faith basis for designating the document as "Highly Confidential" in the first instance, C-Tech's violation is readily distinguishable from the egregious discovery abuses at issue in *Contract Materials* and does not warrant an award of attorneys' fees under the MUTSA.

Because Defendants have not met their burden to offer "clear evidence" that C-Tech brought a trade secretes claim that was "entirely without color," *Optic Graphics*, 87 Md.App. at 789, Defendants' motion for an award of attorneys' fees under the MUTSA will be denied.

**B.   Section 35(a) of the Lanham Act**

Defendants' argument that they are entitled to attorneys' fees pursuant to the Lanham Act also fails. Section 35(a) of that statute provides that a court may award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 117(a).[11]   Such an award is available equally to prevailing

---

[11] Based on C-Tech's characterization of the Defendants as "prevailing" and because this is not an "exceptional case," the issue of whether Defendants are "prevailing part[ies]" for purposes of Section 35(a) of the Lanham Act will not be reached.

plaintiffs and defendants.  *The Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1992), *cert. denied*, 506 U.S. 862 (1992) (establishing that, unlike a prevailing plaintiff, a prevailing defendant is required to show "[s]omething less than 'bad faith'" to prove an "exceptional case").[12]  Relevant factors  to be considered in determining "exceptional[ism]" include whether the losing party engaged in economic coercion, advanced groundless arguments, or failed to cite controlling law.  *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000).  In sum, the court must "determine, in light of the entire case, whether [the losing party's] claims and assertions were so lacking in merit that the action as a whole was 'exceptional.'"  *Retail Servs., Inc. v. Freebies Publishing*, 364 F.3d 535, 551 (4th Cir. 2004).  Hence, an award of attorneys' fees pursuant to Section 35(a) "[is] not to be made as a matter of course, but rather as a matter of the court's considered discretion."  *Ale House*, 205 F.3d at 144.

---

[12] In *Retail Services, Inc. v. Freebies Publishing*, the Fourth Circuit recognized that "[t]his double standard of proof may ultimately prove infirm under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522-26 (1994), which rejected a standard that differentiated between plaintiffs and defendants for the recovery of attorney fees in the copyright context."  364 F.3d 535, 551 (4th Cir. 2004).  The court declined, however, to "decide whether *Fogerty* requires us to apply a uniform standard under 15 U.S.C.A. § 1117(a)."  *Id.*

Defendants assert that the Lanham Act claim asserted by C-Tech is "bereft of factual and legal support" because Plaintiff has done no more than establish that Aversion sells a product that is similar to Rodrepel®, and the Lanham Act does not exist to "prevent the marketing of similar products." (ECF No. 32, at 10-11). C-Tech rejoins that it filed the Lanham Act claim in good faith based on Defendants' promotion of a product similar to Rodrepel® that uses a "slightly revised version of C-Tech's website." (ECF No. 31, at 25). C-Tech also alleges that it suffered damage as a result of Defendants' marketing of competing products, including a one-year delay in finalizing a contract with a major distributor that had discovered Aversion's activities. (*Id.*).

In light of C-Tech's seemingly scant evidence and vague arguments, it may well be that Defendants' motion to dismiss or for summary judgment on C-Tech's Lanham Act claim would have been granted had Plaintiff not opted voluntarily to dismiss its claims with prejudice. Yet, in the absence of such a ruling and without C-Tech having responded in full to the substance of Defendants' motion, there is no basis for concluding, based on the present record, that C-Tech's Lanham Act claim is "so lacking in merit" as to render this action "exceptional." A comparison of the web sites of C-Tech and Aversion reveals very similar language, providing some support for C-Tech's allegation

31

that Defendants' actions "have resulted in the misappropriation of and intrusion upon C-Tech's goodwill and business reputation" as alleged in C-Tech's complaint.    (ECF No. 1, at 14). Similarly, although Defendants contend that C-Tech pursued this action to force Aversion out of business, Defendants have not offered any evidence — other than what appear to be communications between the parties in the context of confidential settlement negotiations (*see* ECF No. 30-1) — that clearly establishes "economic coercion" by C-Tech.   *Ale House Mgmt.*, 305 F.3d at 144.   Accordingly, a discretionary award of attorneys' fees pursuant to Section 35(a) of the Lanham Act is not warranted.

**V.   Conclusion**

For the foregoing reasons, the motion for voluntary dismissal with prejudice filed by Plaintiff C-Tech will be granted; the motion for partial summary judgment filed by Aversion on its counterclaim will be granted in part and denied in part; and the request for statutory attorneys' fees by Defendants will be denied.   A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

32